[No. E007218. Fourth Dist., Div. Two. Nov. 14, 1991.]

THE STATE OF CALIFORNIA, Plaintiff and Respondent, v.
WESTERN NATURAL RUBBER, INC., et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

1496

COUNSEL

Reid & Hellyer, Enos C. Reid and Alexandra S. Ward for Defendants and Appellants.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, and Randall B. Christison, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**HOLLENHORST, J.**—Western Natural Rubber, Inc., Eberhard and Brigitte Kleinmann and Otto and Johanna Wittschier (referred to as "property owners") appeal from that portion of the judgment of condemnation in which the trial court denied them relief on their cross-complaint for inverse condemnation.

I

FACTS

In March of 1987, the State of California (State) brought an eminent domain action to acquire certain property located in Riverside County for the purpose of constructing a state prison. Named as defendants were the property owners along with 10 other parties. (For convenience, we will refer to this as the direct action.) Contending that the State had failed to diligently attempt service of the complaint and summons within six months after the action was filed, property owners brought a cross-complaint for inverse condemnation requesting an order requiring the State to pay the property owners the market value for their interest in the property and for damages for interference with possession and use of the property from the date of the filing of the State's action. (Code Civ. Proc., § 1245.260.)[1] (For convenience, we will refer to this cross-complaint as the inverse action.)

The State eventually served all defendants, and the case proceeded to trial on May 22, 1989. The inverse action was tried to the court at the conclusion of the trial on the direct action.

At the conclusion of the "trial" on the inverse action, the court found in favor of the State. Specifically the court found that the State had attempted service of the complaint and summons on all defendants by mail and therefore had satisfied the requirements of section 1245.260. Judgment was entered and as noted, property owners timely appealed from that portion of the judgment denying them relief on their inverse action. The judgment of condemnation on the State's direct action was not appealed and a final order for condemnation was filed on April 10, 1990.[2]

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]The final order of condemnation vests title to the property in the State when it is recorded. (§ 1268.030, subd. (c).) The record does not reflect if the final order has been recorded.

## II

### LETTER BRIEFS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### SECTION 1245.260

The court found that after filing the complaint in March of 1987, the State attempted to served all defendants residing within the United States by mail pursuant to section 415.30 by the end of March. Service was also attempted by certified mail on those defendants residing outside the states during that period. Certain of the defendants, such as the property owners, did respond to the service by mail and promptly filed responsive pleadings. Others were not effectively served by this process and the mail was returned as undeliverable.

The State undertook searches to locate those domestic defendants, some of whom it was later discovered were defunct corporations, which the State had been unable to serve by mail. By March of 1988, those parties were served by publication. Of the foreign defendants, all were served by mail with the exception of Dr. Ure, an Austrian. Dr. Ure apparently did not respond to this attempted service. As Austria is not a signatory to the Hague Convention, the State had to arrange for service through the United States Embassy in Austria and service was completed in early 1989.

Property owners contend the trial court erred in finding that the State's single attempt to serve all of the defendants by mail satisfied section 1245.260. They contend that the State was required to continue to diligently attempt service throughout the six months following the filing of the direct action.

Section 1245.260 as originally enacted in 1975 provided simply that if the government entity did not file its eminent domain action within six months after adopting a resolution of necessity for condemnation, the owner of the property could file an action for inverse condemnation to force the entity to take the property and pay compensation and/or to recover damages for interference with the possession and the use of the property caused by the

*See footnote, *ante*, page 1495.

adoption of the resolution of necessity. It also provided that if the direct action was filed or the resolution of necessity rescinded before the inverse action was commenced, the owner could not thereafter file an inverse action; any inverse action under this section had to be filed within one year and six months after the adoption of the resolution of necessity; and that as an alternative to filing an inverse action the owner could obtain a writ of mandamus to compel the entity to either rescind its resolution or commence its direct action.

 In 1978, the statute was amended to close a loophole. Apparently, it was discovered that some public entities were filing their direct actions within six months after the adoption of resolution of necessity but were not serving the complaints, thereby "frustrating the purpose of the statute." (Sen. Com. on Judiciary, Background Information.) Accordingly section 1245.260 was amended to allow the owner to commence an inverse action if the entity has filed its direct action but "has not within six months after the commencement of such proceeding attempted diligently to serve the complaint and the summons relating to such proceeding." The amendment also added that "Service by mail pursuant to Section 415.30 shall constitute a diligent attempt at service within the meaning of this section."

 Here, relying on declarations filed by the parties in connection with the motion for leave to file the inverse action, the court found that the State had attempted service by mail pursuant to section 415.30 and that having done so the State was not required to do anything further to effectuate service within six months.[5]

In support of their contention that more than a single attempt at service is required, property owners contend that the phrase "attempted diligently" is ambiguous and must be interpreted. To support their interpretation of this phrase as requiring more than a single attempt at service by mail, property owners refer to the legislative materials. First they refer us to the Senate Committee on Judiciary Report which states "Under the bill, only a diligent

---

[5]Property owners also contend that the State failed to prove that it had attempted service pursuant to section 415.30 on the foreign defendants and that because the State had used certified mail, presumably service on these foreign defendants was actually pursuant to section 415.40. This contention was raised in the trial court and the court asked the attorney for the State whether the foreign defendants were sent a notice and acknowledgment as required by section 415.30. The attorney stated that the only difference between the mailing to the domestic defendants and the foreign defendants was that the domestic defendants were served by first class mail while the foreign defendants were served by certified mail. All of the mailings included notice and acknowledgment forms. On appeal, property owners contend that counsel's unsworn statement does not constitute proof. No objection was made to the court's consideration of counsel's statement and therefore the objection is waived.

attempt at service of summons and complaint would be required. [¶] If such diligent *attempts* fail, the general rule that service must be made within 3 years of the filing of the complaint would govern the action." Property owners also note that when the reference to service by mail was added, it was added at the suggestion of the Association of California Water Agencies. This association also had recommended in its letter to Senator Sieroty that the statute specifically provide that "[f]ailure to complete and return the acknowledgment as provided in Section 415.30 of the Code of Civil Procedure shall preclude an action in inverse condemnation under this Section." From the use of the word "attempts" in the Senate Judiciary Committee Report and the failure of Senator Sieroty to propose this additional language, property owners argue that the Legislature intended more than one attempt at service to be made and intended to require the public entity to continue to diligently attempt service throughout the six-month period.

The State argues that the purpose in adding the phrase stating that service by mail constitutes a diligent attempt at service was intended to clarify the otherwise ambiguous phrase "attempted diligently." We agree.

■ When the words of the statutes are clear and unambiguous, there is no need for statutory interpretation. (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) Here the statute clearly defines what constitutes a diligent attempt within the meaning of section 1245.260. Resort to legislative materials is therefore unnecessary.

However, even if we rely on the legislative materials provided by the parties we find that these materials support our conclusion. As originally proposed, the amendment to the statute only included the phrase "diligently attempted to serve the complaint and the summons relating to such proceeding."

■ In response to concern that "attempted diligently" was ambiguous, the sentence defining a diligent attempt was added. Thus, the purpose of adding the reference to service by mail, was, as urged by the State, to clarify what the public entity was required to do—at a minimum—to comply with the statute and thereby avoid an inverse action.

The fact the language added did not include the additional sentence to the effect that failure to return acknowledgment precluded an inverse action does not persuade us the Legislature intended something more than a single attempt at service by mail. As the State suggests the additional sentence really added nothing but potential confusion. ■ ■ ■ If service by

mail would constitute a diligent attempt and thereby preclude an inverse action, it was unnecessary to say that failure to return the acknowledgment precluded an inverse action.[6] Nor do we find the reference to "attempts" of any particular significance when just prior to that the Senate Judiciary Committee Report stated "Under the bill, only a diligent attempt at service of summons and complaint would be required."

 Property owners contend that it is necessary to give the statute a broader interpretation and require the public entity to continue to exercise diligence throughout the six-month period (and possibly throughout the entire course of the action) to avoid a further loophole. They argue that if all that is required is a single attempt at service by mail, "public entities will, once again, be able to thwart that purpose by making one half-hearted and unsuccessful effort to serve the complaint within six months and then do nothing more."

The evil the Legislature intended to cure was public entities doing *nothing* after filing the eminent domain action. In that situation, as the legislative materials indicate, "a property owner either is not notified of the action taken on his property, or continues to incur damages without having recourse to the inverse condemnation statute." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1705 (1977-78 Reg. Sess.) p. 2.)

By requiring the public entity to make some attempt at service and by expressly stating that service by mail is sufficient, the Legislature corrected the existing problem by requiring the entity to at least attempt service within six months. In the majority of cases, service by mail will satisfy the Legislature's concern by providing notice of the action to the property owner.

Here, because of the number of defendants, including defunct corporations and foreign defendants, service of the summons and complaint obviously was not achieved within six months. But that alone is not sufficient to warrant a more expansive interpretation of a statute which is otherwise clear on its face. If it appears that public entities again have found a loophole in the statute, the matter is best left to the Legislature to correct once again.[7]

---

[6]Moreover, we note that this was language suggested by an outside agency to the author of the bill. There is no indication that this language was considered by the Legislature or by any legislative committee. We cannot presume that the Legislature had a reason for rejecting language when it never considered the language.

[7]We do not imply that such a loophole exists. Here there is nothing to suggest, for example, that the State knew the addresses to which it was mailing service were incorrect or knew that

## IV

### DISPOSITION

Judgment affirmed.

Ramirez, P. J., and McDaniel, J.,* concurred.

---

the parties were no longer at those addresses. In other words, there is nothing to support the property owners' implicit contention that the State's effort at service was "half-hearted" or in bad faith.

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.